IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| GEORGE LALOUDAKIS | * | |
| v. | * | Civil No. RDB-13-0467 |
| UNITED STATES OF AMERICA | * | |

* * * * * * * * * * * *

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | Criminal No. RDB-09-0608 |
| GEORGE LALOUDAKIS | * | |

**MEMORANDUM OPINION**

The *pro se* petitioner George Laloudakis (hereinafter "Petitioner") has filed a Motion to Vacate, Set Aside, or Correct Sentence (ECF No. 265), pursuant to 28 U.S.C. §2255. Petitioner challenges his sentence on the grounds that he received ineffective assistance of counsel in violation of the Sixth Amendment. In his supporting memorandum (ECF No. 265-2), Petitioner alleges that his counsel was ineffective on three grounds: that counsel (1) lied to Petitioner and members of Petitioner's family about the length of the sentence that petitioner would receive in order to compel him to sign the plea agreement, (2) failed to negotiate a better plea agreement in light of the lack of evidence against him, and (3) failed to move to dismiss the Second Superseding Indictment on the grounds that the robberies did not interfere with interstate commerce and were thus not subject to a charge of Conspiracy to Commit Hobbs Act Robbery, in violation of 18 U.S.C. §1951 .

Petitioner also requests in his supporting memorandum (ECF No. 265-2) that new counsel be appointed to represent him at an evidentiary hearing on the merits of his §2255

1

Motion to Vacate. Pursuant to a review of Petitioner's motion and attached documents, as well as the Government's response (ECF No. 267), this Court finds that no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2011). Because Petitioner's claim of ineffective assistance of counsel fails to show either that counsel was deficient or that this deficiency prejudiced petitioner's defense, Petitioner's Motion to Vacate is DENIED. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Furthermore, because Petitioner is unable to demonstrate any extraordinary circumstances that would negate Petitioner's sworn statements during the Rule 11 colloquy at his arraignment (ECF No. 144), Petitioner's requests for an evidentiary hearing and the appointment of new counsel are DENIED.

## BACKGROUND

Petitioner has acknowledged under oath that he participated in both the planning and commission of a series of armed commercial and home invasion robberies between July and November 2009. Plea Agreement, 10, ECF No. 143. In the weeks preceding September 2, 2009, Petitioner and his co-defendants began surveillance of the residence of Larry Pozenak (hereinafter "Pozenak"), the former owner of Citizens Pharmacy Services. Petitioner and his co-defendants believed that Pozenak kept proceeds of his business at his residence. *Id.* On September 2, 2009, Petitioner and his co-defendant Daniel Chase (hereinafter "Chase") drove to the security gate of Pozenak's residential neighborhood in a gold Kia that Chase rented from Enterprise Rental. *Id.* Upon arrival at the security gate, Chase called Pozenak and impersonated a police officer in order to gain access to Pozenak's home. *Id.* Petitioner remained inside the gold Kia in Pozenak's driveway as Chase entered the home, sat down with Pozenak and his wife, and retrieved a firearm from a briefcase. *Id.*

Chase pointed the firearm at Pozenak and his wife and ordered them to lie on the floor. *Id.* Petitioner then entered the residence wearing a black ski mask. *Id.* Petitioner and Chase bound and physically restrained Pozenak, his wife, and three female maids who entered the residence during the armed robbery. *Id.* Pozenak's wife was forced to open the safe in the bedroom closet for Petitioner. Chase and Petitioner left the residence with jewelry and currency, including proceeds from Citizens Pharmacy Services. *Id.* Chase advised Enterprise Rental that the car "might have been used in a crime" when he returned the vehicle. *Id.*

Following the commission of the armed robbery of Pozenak's residence on September 2, 2009, Petitioner and his co-defendants participated in the planning and surveillance of the residence of Mr. Makris (hereinafter "Makris"), the owner of Sparrows Point Restaurant. *Id.* at 11. Petitioner himself followed Makris from the restaurant to his residence on at least two separate occasions. *Id.* Following a disagreement with his co-defendants, Petitioner returned to Greece and did not participate in the commission of the September 29, 2009 home invasion and armed robbery of Makris' residence. *Id.* Antowan Bell replaced Petitioner as the "muscle" during the commission of the September 29, 2009 robbery. *Id.* State authorities received wiretap authorizations for the cellular phones of co-defendants Chase and Nikolaos Mamalis (hereinafter "Mamalis") in November 2009. *Id.* Authorities overheard numerous phone calls between Chase and Mamalis that mentioned the disagreement with Petitioner and their plans to kill Petitioner and deny him proceeds from the September 2, 2009, robbery. *Id.*

On March 2, 2010, a Federal Grand Jury for the District Court of Maryland returned a Second Superseding Indictment charging Petitioner with Conspiracy to Commit Hobbs Act Robbery in violation of 18 U.S.C. §1951(a) (Count One), Using a Firearm During and in Relation to a Crime of Violence, that is conspiracy to interfere with interstate commerce by

3

robbery as alleged in count one in violation of 18 U.S.C. §2 and 18 U.S.C. §924(c) (Count Two), Using a Firearm During and in Relation to a Crime of Violence, that is conspiracy to interfere with interstate commerce by robbery as alleged in count one in violation of 18 U.S.C. §2 and 18 U.S.C. §924(c) (Count Three). 4-7, ECF No. 67. On December 2, 2010, Petitioner and his attorney both signed a plea agreement offered by the United States Attorney's Office for the District of Maryland, agreeing that Petitioner would plead guilty to Count One and Count Three of the Second Superseding Indictment. Plea Agreement, 9, 13, ECF No. 143. The signature page on this plea agreement also stipulated that Petitioner had read, reviewed, and understood the agreement, including the Advisory Guidelines Stipulation, and did not wish to make any changes. *Id.* at 9. Furthermore, the signature page stated that Petitioner was satisfied with the representation of his attorney. *Id.*

The Petitioner entered his plea of guilty pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure with the agreed range of a total aggregate sentence for Count one and count Three of between, on the low end, 60 months (should the Court find that 18 U.S.C. §924(c)(1)(A)(I) applies) or 84 months (should the Court find that 18 U.S.C. §924 (c)(1)(A)(ii) applies)and, on the high end, of the advisory sentencing guideline range found applicable by the court plus the consecutive sentence required for Count Three. Plea Agreement, 5-6, ECF No. 143. Petitioner received an aggregate sentence of 117 months in custody. On April 21, 2011, Petitioner was sentenced to 33 months of imprisonment on Count One and 84 months of imprisonment on Count Three, to run consecutive to the sentence for Count One. Petitioner's sentence included 3 years of supervised release for Count One and 3 years of supervised release for Count Three, to run concurrently. Transcript of Sentencing, 65:3-7, ECF No. 240. Petitioner

filed a Motion under 28 U.S.C. §2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody on February 13, 2013. Motion to Vacate, ECF No. 265.

## STANDARD OF REVIEW

Documents filed *pro se* are "liberally construed" and are "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted). In order to establish a claim for ineffective assistance of counsel, a petitioner must prove both elements set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 671 (1984). First, a petitioner must show that his counsel's performance was so deficient as to fall below an "objective standard of reasonableness." *Id.* at 688. In assessing whether counsel's performance was unconstitutionally deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Second, a petitioner must show that his counsel's performance was so prejudicial as to "deprive the defendant of a fair trial." *Id.* at 687. In order to establish this level of prejudice, the petitioner must demonstrate that there is a "reasonable probability that, but for counsel's [alleged] unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Satisfying either of the two parts of the test alone is insufficient; rather, the petitioner must meet both prongs of the *Strickland* test in order to be entitled to relief. *See id.* at 687. ("Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.").

## ANALYSIS

In his Motion to Vacate, Petitioner makes three arguments, specifically, that his attorneys (1) lied to Petitioner and members of Petitioner's family about the length of the sentence that Petitioner would receive in order to compel him to sign the plea agreement, (2)

failed to negotiate a better plea agreement in light of the lack of evidence against him, and (3) failed to move to dismiss the Second Superseding Indictment on the grounds that the robberies did not interfere with interstate commerce and were thus not subject to a charge of Conspiracy to Commit Hobbs Act Robbery, in violation of 18 U.S.C. §1951. Finding that none of Petitioner's claims have any merit, this Court denies Petitioner's Motion to Vacate. Similarly, this Court denies Petitioner's request for an evidentiary hearing and the appointment of new counsel.

**I. Petitioner's Motion to Vacate**

   **A. Petitioner's Claim that his Attorneys Lied to Him and his Family Regarding the Length of his Sentence in order to Elicit a Guilty Plea.**

Petitioner claims that his attorneys "lied to [the] petitioner and his family to convince him to sign a plea agreement and enter a guilty plea despite his innocence." Pet'r's Mot., 2, ECF No. 265-2. Petitioner's claim fails to satisfy either the "deficiency" or the "prejudice" prong of *Strickland*. The appropriate standard for effective representation by counsel is "reasonableness under prevailing professional norms." *Id.* at 688. Thus, in order to show that counsel's representation was "deficient," Petitioner must show that counsel's performance was below "the range of competence normally demanded of attorneys in criminal cases." *Id.* at 687. Furthermore, Petitioner carries the burden of proving that not only was counsel "deficient" but also that "prejudice" resulted from such "deficient" representation. *Fields v. Att'y Gen. of MD.*, 956 F.2d 1290, 1297 (4th Cir. 1992).

*In U.S. v. Foster*, 68 F.3d 86, 88 (4th Cir. 1995), Petitioner attempted to establish prejudice in a Motion to Vacate by claiming that, if he had been correctly informed that he would be sentenced as a career offender, he would have proceeded to trial.[1] The trial court in *Foster*

---

[1] Under U.S.S.G. § 4B1.1. a defendant is considered a career offender if he is convicted of a serious drug offense or a crime of violence and has two prior such convictions on his record. A crime of violence includes "any offense under federal or state law, punishable by imprisonment for a term exceeding one year" that "has as an element the

conducted a proper Rule 11 colloquy at sentencing. *Id*. Thus, the Fourth Circuit did not look into whether Foster's attorney's performed below a normal range of competency because the court found that "Foster was clearly not prejudiced by any misstatements made by his attorney." *Id.* The Fourth Circuit held that "if the trial court properly informed Foster of the potential sentence he faced, he could not be prejudiced by any misinformation his counsel allegedly provided him." *Id.*

Similar to the appellant in *Foster,* Petitioner in this case cannot claim that his attorneys gave him misinformation about the length of his sentence that was not clarified by the Rule 11 colloquy or plea agreement, thus constituting "prejudice." On January 6, 2011, Judge Legg of this Court conducted an accurate and thorough Rule 11 colloquy in order to determine that Petitioner was competent to plead guilty and that he was entering the plea knowingly and voluntarily. Ct. Tr., Jan. 6, 2011 at 2-19. Petitioner now claims that his counsel was ineffective because they led Petitioner to believe that he would only receive a 33 month sentence,[2] despite the fact that Petitioner agreed otherwise in both his plea agreement and Rule 11 colloquy.

In addition, Petitioner's plea agreement explicitly stated that the Defendant understood that the Court would be responsible for determining a sentencing guideline range pursuant to the Sentencing Reform Act of 1984. Plea Agreement at 4 ¶5. In signing this agreement, Petitioner

---

use, attempted use, or threatened use of physical force against the person of another or is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a). Appellant, Foster, pled guilty to count two of a three count indictment and was sentenced to 151 months in prison for aiding and abetting the distribution of 2.42 grams of cocaine base in violation of 21 U.S.C. § 841(a)(1). Because Foster had two prior felony convictions, he was sentenced as a career offender under the Sentencing Guidelines. *United States v. Foster,* 68 F.3d 86, 87 (4th Cir. 1995)

[2] In the Supporting Memorandum to his §2255 Motion to Vacate, Petitioner wrote that his attorneys made "explicit promises" to him and his family that he would "receive a 33 month sentence only". Supporting Memorandum, 2, ECF No. 265-2 Furthermore, Petitioner stated that he "showed up at the Rule 11 hearing, answering all of the questions of the [C]ourt as instructed by counsel, firmly believing he was going to be sentenced to the 33 months his attorneys promised." *Id.* at 3.

7

agreed that, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), a total, aggregate sentence of at least 60 to 84 months would be appropriate for counts One and Three. In addition, Petitioner agreed to sentences for Counts One and Three as lengthy as the top of the guideline range to run consecutively if the Court chose to sentence him in that manner. *Id*. at 5-6. During his guilty plea, Petitioner confirmed that he understood that Judge Legg would sentence him within this stipulated guideline range. Ct. Tr., Jan. 6, 2011 at 14:13-18.

Similarly to *Foster,* the Court specifically reviewed with Petitioner during his guilty plea that he was agreeing with the facts that he was guilty as charged on both counts One and Three of the Second Superseding Indictment. On January 6, 2011 the Court informed Petitioner that, "by agreeing to the facts stipulated in exhibit A, you are agreeing that you are guilty as charged on both counts" and asked Petitioner if he understood. Petitioner responded "Yes, sir." Ct. Tr., Jan. 6, 2011 at 12:1-8. Judge Legg also reiterated that Petitioner could not rely on any promises regarding the length of his sentence that had been made to him by counsel:

> THE COURT: [Y]our counsel cannot promise you if I accept the [guilty] plea what your sentence will be within that range. They're very experienced counsel and can certainly make a good faith estimate, assessment of what your sentence will likely be, but they can't make any promises. So if I was to impose a sentence that was more than what you are expecting, I would not permit you to withdraw from the plea agreement on that basis alone. Do you understand that, sir?
>
> THE DEFENDANT: Yes.

Ct. Tr., Jan. 6, 2011 at 15:6-15.

Moreover, in signing the plea agreement Petitioner agreed that he carefully reviewed every part of the agreement with his attorney, including the Factual and Advisory Guideline Stipulation and the Statement of Facts, and did not wish to change anything. Plea Agreement at 9, 13. Because Petitioner does not provide any definite evidence to the contrary, this Court

concludes that counsel properly discussed the mandatory minimum sentence that Petitioner would receive. Petitioner fails to overcome the burden of proving that his counsel was "deficient" in light of the fact that courts adopt a "strong presumption" that counsel's performance was reasonable. *Strickland,* 466 U.S. at 689.

Thus, this Court presumes that any discussion that Petitioner had with his attorneys regarding a possible 33 month sentence was clarified and corrected for Petitioner during the execution of the Rule 11 colloquy. Therefore, Petitioner's defense was not "prejudiced". In summary, Petitioner cannot make out a claim of ineffective assistance of counsel for failure to inform him of the likely sentence in his case. The Fourth Circuit has denied such claims, and petitioner failed to show that counsel and this Court did not inform him of the sentencing guideline range. Therefore, Petitioner also fails to satisfy the "prejudice" of the *Strickland* test for ineffective assistance of counsel.

**B. Petitioner's Claim that his Attorneys Failed to Negotiate a Better Plea Agreement in Light of the Lack of Evidence Against Him.**

Petitioner claims that "a much better plea agreement should have been able to have been negotiated by counsel under the circumstances." Pet'r's Mot. at 4. Petitioner's claim fails because he does not prove that his counsel's assistance caused any "prejudice" to his defense. In *Hooper v. Garraghty*, 845 F.2d 471, 475 (4th Cir. 1988) the Fourth Circuit held that the defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* (quoting *Hill v. Lockhart,* 474 U.S. 52, 59 (1985) (concluding that petitioner failed to prove that, but for erroneous advice given by counsel regarding parole eligibility under the sentence agreed to in the plea agreement, he would not have pleaded guilty).

The Fourth Circuit applied this test in *Fields,* 956 F.2d 1290, 1297 (4th Cir. 1992) where the crux of Fields' case was that, with effective assistance, he would have pled to a different plea bargain and received a more favorable sentence. *Id.* After noting the firmly established principle that, "absent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy," *id.* at 1299 the court found no evidence that Fields' guilty plea was involuntary or uninformed. *Id.* In fact, the court found that Fields failed to satisfy *Hooper's* "prejudice" requirement because he would have pled guilty even with more competent counsel. *Fields*, 956 F.2d at 1297. Therefore, the court reasoned that Fields never actually intended to stand trial. *Id.* Accordingly, the court upheld the district court's denial of Fields' ineffective assistance of counsel claim, reasoning that "accepting [the plea] was a reasonable and prudent decision." *Id.*

Likewise, Petitioner in this case voluntarily gave an informed guilty plea on January 6, 2011. During the proceeding, the Court read an excerpt from the plea agreement and confirmed the information it contained with the Petitioner:

> THE COURT: I am completely satisfied with the representation of my attorney. Two questions, sir, is that your signature and is the statement that I just read entirely correct?
>
> THE DEFENDANT: It is my signature, and it's correct.

Ct. Tr., Jan. 6, 2011 at 4:3-7.

> THE COURT: Has anyone attempted to force you against your own free will to enter into this agreement, sir?
>
> THE DEFENDANT: No.

Ct. Tr., Jan. 6, 2011 at 4:21-23.

> THE COURT: Has anyone made any promises to you that are not written in the agreement itself?

> THE DEFENDANT: No.

Ct. Tr., Jan. 6, 2011 at 4:24-25, 5-1.

Consequently, following the Fourth Circuit's holding in *Fields,* Petitioner must present clear and convincing evidence contrary to the representation he gave under oath during his guilty plea in order to assert that his counsel was ineffective. *Fields*, 956 F.2d at 1299. Petitioner has not presented any evidence to the contrary. Thus, this Court finds that Petitioner is bound to the statements made during his plea colloquy which confirm that he willingly and knowingly entered into his guilty plea, and that he was satisfied with the representation of his attorneys.

In addition, Petitioner's plea agreement provides affirmative evidence of the competency of his attorneys. The plea agreement states that Petitioner received a cumulative three-level reduction in his adjusted offense level due to his prompt recognition and acceptance of responsibility and timely notification of his intent to plead guilty. Plea Agreement at 4-5¶b. The three level drop in offense level creates a lower sentencing guideline range. Therefore, Petitioner's counselors showed competency in their plea bargaining, which benefitted Petitioner who was unable to put forth any evidence that he ever intended to stand trial. Thus, guided by the Fourth Circuit's decision in *Fields,* this Court finds that Petitioner cannot make the showing of "prejudice" required by *Hooper.*

**C. Petitioner's Claim that his Attorneys Failed to Move to Dismiss the Indictment Once They Learned that None of the Victims of the Crime Were Engaged in Interstate Commerce.**

Petitioner claims that his "counsel failed to move this [C]ourt to dismiss the indictment as to their client once they learned that…none of the victims of the crime were 'engaged in interstate commerce' as required for Hobbs Act jurisdiction." Pet'r's Mot. at 9-10. This Court finds that Petitioner's claim has no merit because the Government had proper jurisdiction to charge Petitioner with Hobbs Act Conspiracy. The two elements of a Hobbs Act crime are: (1)

robbery or extortion, and (2) interference with commerce. *Stirone v. United States,* 361 U.S. 212, 218 (1960). The Hobbs Act does not require proof that the defendant intended to affect interstate commerce; rather, the government must only show that interstate commerce was affected as a natural result of such a robbery. *United States v. Williams*, 342 F.3d 350, 354 (4th Cir. 2003) (quoting *U.S. v. Spanglo*, 546 F.2d 1117, 1118-9 (4th Cir. 1976)). In fact, the Fourth Circuit has held that the jurisdictional predicate "may be shown by proof of probabilities without evidence that any particular commercial movements were affected."*U.S. v. Brantley*, 777 F.2d 159, 162 (4th Cir. 1985). This Court finds that a jury would have been able to conclude that there was a likely probability of an effect on interstate commerce based on the information presented by the government and thus, the government did have Hobbs Act jurisdiction.

The Fourth Circuit concurs with its sister circuits in holding that there is a required nexus "'between the extortionate conduct and interstate commerce in order to establish federal jurisdiction….[T]he connection with or effect on interstate commerce must have been at least a realistic probability at the time of the extortion.'" *U.S. v. Buffey*, 899 F.2d 1402, 1404 (4th Cir. 1990) (quoting *U.S. v. Elders*, 569 F.2d 1020, 1023-1024 (7th Cir. 1977)). The required nexus can be satisfied through the depletion of assets theory. The government can prove the jurisdictional predicate by showing a reasonable probability that the defendant's actions would have the effect of depleting the assets of an entity engaged in interstate commerce. *Elders*, 569 F.2d at 1025. The Fourth Circuit addressed this issue in *Williams*, where four individuals robbed and killed a drug dealer. *Williams*, 342 F.3d at 352. The Fourth Circuit held that the trade of drug dealing affected interstate commerce, as it was both "economic and interstate in character." [3] *Id.*

---

[3] In *Williams*, a group of co-defendants received word that the victim, a man with whom one of the co-defendants had previously had three drug dealings, recently received a large amount of cocaine. The court found that "[b]ased on this information, the four individuals decided to drive to [the victim]'s trailer home to rob him." *Id* at 352. The victim fought back and thwarted the home-robbery attempt. However, the co-defendants were able to force

12

at 354. Furthermore, the Fourth Circuit held that because the victim was targeted based on his profession, and because it could be rationally concluded that cash stolen from his person constituted the proceeds of his drug-dealing business, that the government had a sufficient connection between the robbery and interstate commerce for Hobbs Act jurisdiction. *Id.* at 355.

Here, the government charged Petitioner with Hobbs Act robbery in violation of 18 U.S.C. §1951 because some of the cash stolen from both the Pozenak and Makris' residences were proceeds from their respective businesses. Similar to the familiarity one of the co-defendants had with the victim in *Williams,* Petitioner's co-defendant Mamalis targeted Pozenak after a prior business dealing where Pozenak provided a capital loan for a business in which Mamalis was involved. Plea Agreement at 10. The co-defendants in *Williams* specifically targeted drug dealers to rob them of the cash proceeds from their dealings. Similarly, the co-defendants identified Pozenak's residence and conducted surveillance of it, believing that he kept some of the proceeds of his business at his home. *Id.* Currency taken from Pozenak's home included some proceeds from Citizen's Pharmacy Services, *id.*, which is a business that affects interstate commerce insofar as many of their pharmaceutical products were obtained from distributors outside of the state of Maryland and transported across state lines. *Id.* at 12.

Mamalis also knew Makris from prior business and social dealings. *Id.* at 11. Similar to the Pozenak robbery, Petitioner's co-defendants identified Makris' residence, believing that he kept

---

him into their van where they threatened his life. *Id.* Eventually, the victim told the co-defendants that he had $1,000 in cash in his pocket. *Id.* at 353-54. The co-defendants robbed and murdered the victim before dividing the $1,000 among themselves. *Id.* at 354. The Fourth Circuit held that the robbery satisfied the elements of the Hobbs Act:

> Indeed, they were motivated to rob [the victim] precisely because he was a drug dealer….He also had $1,000 in cash on his person at the time he was robbed, further supporting the conclusion that he was involved in drug trafficking. Based on all of this evidence, it was hardly irrational for the jury to conclude that [the victim] was a drug dealer and that the stolen $1,000 constituted proceeds from his drug business, and therefore that the robbery of [the victim] satisfied the elements of the Hobbs Act.

*Id.* at 355.

proceeds from his business at his home. *Id.* Like the $1,000 in cash that the Fourth Circuit held constituted business proceeds in *Williams,* Petitioner's co-defendants took around $10,000 in proceeds from Makris' business from a kitchen drawer during the robbery. *Id.* In addition, Petitioner's co-defendants took approximately $140,000 from a safe during the robbery, which included proceeds from Makris' business. *Id.* The plea agreement also states that Sparrows Point Restaurant conducts its business in a way that affects interstate commerce insofar as many of the items they sell were obtained from distributors outside of the state of Maryland and transported across state lines. In both robberies in this case, like in *Williams,* the victims were targeted for their professions based on prior business and social dealings with the co-defendants. Furthermore, it is reasonably probable that cash stolen from both robberies could deplete the assets available to both business owners to put toward their businesses. Thus, in accordance with the court's finding in *Williams,* the government had Hobbs Act jurisdiction in this case.

In addition to the guiding principles from *Williams,* this Court's finding is also supported by recent decisions of our sister circuits that address the specific instance of defendants who rob business owners at their homes. These cases all address the issue of "whether the robbery of an individual in her home requires proof of a more substantial connection to interstate commerce than a robbery committed at a place of business." *U.S. v. Powell*, 693 F.3d 398, 401 (3rd Cir. 2012). The United States Court of Appeals for the Third Circuit mirrored the reasoning relied upon in *Williams* in holding that targeting satisfies the jurisdictional nexus required by the Hobbs Act.

In *Powell*, three men followed a store owner from her business to her home where they broke in, brandished hand guns, restrained and beat the woman and her husband, and stole cash proceeds from the woman's business. *Id.* at 399. The Third Circuit held that there was a direct

link to commerce in the robbery because "Powell specifically targeted the proceeds of businesses engaged in interstate commerce." *Id.* at 404. Furthermore, the court found that regardless of the fact that it took place in a home, the robbery satisfied the Hobbs Act jurisdictional nexus because it was "directed at a business establishment." *Id.* The Third Circuit cites the Second Circuit's opinion in *U.S. v. Perrotta* which clearly lays out the theory of how the Hobbs Act jurisdictional nexus can be satisfied through targeting:

> The [Hobbs Act] jurisdictional nexus could be satisfied by showing that the victim directly participated in interstate commerce; that the victim was targeted because of her status as an employee at a company participating in interstate commerce; that the harm or potential harm to the individual would deplete the assets of a company engaged in interstate commerce; [or] that the crime targeted the assets of a business rather than an individual.

*U.S. v. Perrotta,* 313 F.3d 33, 37-38 (2nd Cir. 2002). Thus, the court held that the robbery of an individual in his or her home does not require proof of a more substantial connection to interstate commerce than that required for a robbery at a business. The court held in *Powell* that, "[t]he fact that the robbers believed it would be easier and more profitable to commit their crimes at business owners' homes…cannot be read to negate the robberies' effect on interstate commerce." *Powell*, 693 F.3d at 406. Pozenak and Makris were both targeted because Petitioner and his co-defendants were seeking to rob them of the proceeds from their businesses. Therefore, it could be reasonably concluded that the robberies targeted the assets of their business and not their personal assets, thus affecting interstate commerce.

In a similar case applying the depletion of assets theory, the United States Court of Appeals for the First Circuit in *U.S. v. Jiminez-Torres*, 435 F.3d 3 (1st Cir. 2006) held that "[d]epletion of the assets of a business engaged in interstate commerce is a common method for demonstrating that a robbery had an effect on interstate commerce….This is so even if the business's assets were stolen from a home." *Id.* at 9; *See U.S. v. Rodriguez-Casiano*, 425 F.3d

12, 13 (1st Cir. 2005). In *Jiminez*, a group of co-defendants targeted the victim's home because the victim owned a gas station. *Jiminez*, 435 F.3d at 7. The co-defendants broke into the victim's home carrying guns and stole $600 in cash proceeds from the gas station before killing the victim. *Id.* The gas station closed permanently the day after the robbery. *Id.*

The First Circuit held that "the jury could have reasonably determined that the robbery reduced the gas station's revenue by $600, thereby depleting the assets that station had available to participate in interstate commerce." *Id.* at 9. In addition, the court cited *U.S. v. Devin,* 918 F.2d 280 (1st Cir. 1990), where "Hobbs Act jurisdiction was established where money was stolen from the personal funds of a business owner because the jury could infer that the depletion of the owner's assets would ultimately deplete the assets of the business." *Id.* at 293-94. Therefore, it is reasonable to infer that a jury in this cas could have found that the cash taken from both the Pozenak and Makris residences depleted the assets that the respective businesses had available to them to participate in interstate commerce. Because both victims in this case were targeted for their involvement in interstate commerce, and because the cash taken from both residences can be reasonably inferred as depleted business assets, this Court finds that the government met all the requirements for Hobbs Act jurisdiction in this case.

Petitioner himself stated that his counsel was not ineffective during his plea colloquy. In fact, Petitioner's attorneys effectively negotiated a plea agreement for Petitioner with a lower sentencing guideline range. In addition, the government is able to satisfy the Hobbs Act jurisdictional nexus in this case. Thus, Petitioner's attorneys would not have been able to dismiss the indictment. For the aforementioned reasons, this Court finds no valid ineffective assistance of counsel claim in this case.

**II. Petitioner's Request for an Evidentiary Hearing and the Appointment of New Counsel**

Petitioner is not entitled to relief in this case because he failed to satisfy both the "deficient" and "prejudice" prongs of the *Strickland* test. According to 28 U.S.C. §2255(b), this Court can deny a §2255 motion if "the files and records of the case conclusively show that the prisoner is entitled to no relief." Previously, the Fourth Circuit held that unless Petitioner can prove extraordinary circumstances, such as admittedly inefficient representation or evidence of mental illness or intoxication at the time of the Rule 11 Colloquy, he or she is not entitled to an evidentiary hearing. *United States v. Lemaster*, 403 F.3d 216, 221-22 (4th Cir. 2005). In coming to this decision, the *Lemaster* Court reasoned that "a court must determine 'whether the petitioner's allegations, when viewed against the record of the Rule 11 plea hearing, were so palpably incredible, so patently frivolous or false as to warrant summary dismissal.'" *Id.* at 220 (quoting *United States v. White,* 366 F.3d 291, 296 (4th Cir.2004)).

The defendant in *Lemaster* was denied an evidentiary hearing based on his testimony during his Rule 11 colloquy and sentencing hearing in light of his inability to provide evidence of any extraordinary circumstance that would mitigate that testimony. Petitioner is similarly unable to point to any extraordinary circumstances that affected his testimony during his plea or his sentencing. Thus, in accordance with the Fourth Circuit's holding in *Lemaster*, this Court finds that Petitioner is not entitled to an evidentiary hearing.

CONCLUSION

For the reasons stated above, Petitioner's Motion to Vacate, Set Aside or Correct Sentence (ECF No. 265) is DENIED.

A certificate of appealability shall not issue absent "a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2) (2000). A petitioner satisfies this standard by demonstrating that reasonable jurists would find that an assessment of the constitutional claims is debatable and that any dispositive procedural ruling dismissing such claims is likewise debatable. *Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003); *Rose v. Lee*, 252 F.3d 676, 683-84 (4th cir. 2001). Because reasonable jurists would not find Petitioner's claims debatable, a certificate of appealability is DENIED.

A separate Order follows.

Dated: November 12, 203

\_\_\_\_/s/_____
Richard D. Bennett
United States District Judge